# WILLIAM DEERING

## v.

# JOSEPH E. PORTER.

*Negotiable Instruments—Notes—Guaranty by Agent—Evidence—Instructions.*

In an action brought to recover upon a contract of guaranty of the payment of certain promissory notes, the only point in controversy being as to the interest thereon, the defendant contending that he had an agreement with the plaintiff that if he would continue the agency of plaintiff's machines, and push the sale thereof, plaintiff would never exact anything from him except the principal, if they were not collected out of the makers, this court holds, in view of the evidence, that the judgment for the principal can not stand.

Deering v. Porter.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of LaSalle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. D. B. SNOW, for appellant.

Messrs. MAYO & WIDMER, for appellee.

LACEY, P. J.   This suit was brought in the Circuit Court, August, 1890, by appellant against appellee, on a contract of guaranty of payment of two promissory notes of the sum of $130 each, payable on the 1st of January, 1884 and 1885, respectively, dated July 7, 1883, at eight per cent interest, signed by Emerson Calkins and A. S. Calkins, payable to William Deering & Co.

The guaranty of Porter on the back of said notes was as follows, to wit :

"For value received I hereby guarantee that the indebtedness mentioned in the within note, with interest at the rate agreed upon, will be paid by the maker thereof at maturity, and hereby consent that the time of payment thereof may be extended, or new note or security for the same debt taken, and this guaranty shall extend and apply thereto, hereby waiving protest, demand and notice of non-payment, and necessity of suit against any party to this note, or any note taken in its place.

(Signed)   "J. E. PORTER."

Across the name of J. E. Porter were drawn heavy lines of ink, and also written on the back thereof, "cancelled by judgment in James F. Calkins' court October 10, 1885."

At the date of these notes appellant was engaged in the manufacture of farm machinery at Chicago, and appellee was his agent for the sale of such machinery at Ottawa and vicinity.   By commission contract between the parties for the season of 1883, appellee agreed to guarantee the payment of all notes taken for machinery sold, such notes to be drawn payable to the order of William Deering.

The two notes in evidence were given by the makers there-

of in accordance with the contract, and guaranteed by the appellee. The cause was tried in the Circuit Court, April. 1891, resulting in a verdict in favor of appellant for the principal of the notes, $260. Motion was made by him for a new trial which was overruled and judgment rendered on the verdict, from which this appeal is taken. The only point in controversy between the parties was as to the interest accruing on the notes.

The defense set up to that portion of the notes consisting of the interest, was that in the fall of 1886, appellee had an agreement with the appellant, that if he (appellee) would continue to handle appellant's machinery, and push the trade as he had done theretofore, appellant would never exact anything from appellee except the principal of those notes if they were not collected out of the makers. The contest on the trial was as to whether any such agreement had ever been made.

After a full examination of the evidence, we are satisfied that the evidence fails to support the verdict of the jury as rendered. The defense rested upon the unsupported testimony of appellee. The appellee testified in substance that in the fall of 1886 he had a conversation with appellant in Chicago about these notes in which he said to Deering that when the notes were taken, the makers were reasonably good, and stated a conversation with Mr. Hart, had with him in reference to the contract when he (Hart) was agent, and that appellee told appellant, or said to him, that Hart had told the former that was the reason he signed these contracts; that if they were taken when the parties were good, and after they became insolvent, where a note was extended for years, which was frequently done, Mr. Hart told him they did not live up to the letter of the law. Mr. Deering then said, if appellee would continue to handle his machinery as he had done theretofore, that he would never exact anything from appellee but the principal of those notes, if he did that, if they were not collected out of Calkins. It further appears from the testimony of appellee that he continued to handle the machinery of appellant and Deering & Co. until the spring of 1890, when he was discharged by them.

Deering v. Porter.

This evidence of appellee is contradicted by his own letters and statements written and made afterward, and by his own actions and conduct, in such a way as to convince us that the jury made a mistake in their verdict. Appellee is also contradicted by appellant, who testifies that he was certain he had never made any offer to appellee under any circumstances that would involve the loss of the interest several years after the notes had fallen due.

Mr. Porter also wrote a letter, February 27, 1891, to appellant, a good while after this suit was commenced, in which he stated to the appellant that if the latter would go before any notary public or justice of the peace and make oath that " I was not in your office, and that we had no talk or understanding in regard to the Calkins note, and that Mr. Gilchrist will make an affidavit that he did not say in the presence of my son at various times when making settlement with us, or wishing to contract with us for the season of 1887 or 1888, that this note matter never would be more than the face of the note—that if he will make sworn affidavits that he never made such promise to us, I will settle this matter, allowing you as your attorney offered with mine, seven per cent, and lift the Calkins note."

Now it further appears from the evidence in the case, and by the testimony of appellee himself, that he never had any conversation of that kind with Mr. Gilchrist after 1886, after " I had agreed with Deering about this note."

His son also testified that he was never present at but one conversation with Mr. Gilchrist and his father, and that was in the fall of 1886, and that was at the time it was claimed by appellee that Gilchrist advised him to see Deering in reference to these notes. So it appears very clearly that the letter was written entirely upon a false assumption, clearly made in the letter, that the appellant's agent had been making such promises to him, and must have been known to have been such by appellee when the letter was written. This makes a bad showing as to the truthfulness of appellee. In January, 1889, as testified to by E. A. Woodward, who was the agent and attorney of appellant, he had a conversation with ap-

pellee in which the latter stated that "if William Deering & Co. was going to hold him for the payment of those notes, he might as well pay them at once and save further interest."

The name of Porter, at the time Woodward delivered these notes to appellee, was not erased from the guaranty, they being left in appellee's hands to collect of the makers.

This erasure was made admittedly by appellee without authority from the appellant or any agent of his. It is true appellee says, in excuse, one Orendorf, who did not claim to have any authority, told him to take his name off as guarantor, and that he (appellee) thought appellant might acquiesce in it.

We think this is not a sufficient excuse for such an unwarranted act as this, and manifests a disposition on the part of appellee to take an unwarranted advantage, and goes strongly to impeach the honesty of his defense. But one of the strongest proofs that no such contract was ever made as appellee insists on, was a letter written by him to Deering & Co., dated February 20, 1889, in which he speaks of Woodward leaving the notes with him, and about his efforts to collect them from E. and A. S. Calkins, also Woodward's efforts to collect, and wants the lowest figures appellant will take for the notes if he could settle them with the makers. In this letter appellee speaks complainingly of his being a guarantor on the notes, and says: "If these two notes were settled in some way in good shape, or if I was released from them, I would feel very differently in regard to pushing the sale of the Deering binders, etc. * * * I indorsed these notes, paying very little attention to the nails I was driving into myself as to making the notes good, but as soon as I saw the position that it placed me in, I have steered very clear of making indorsements on any machinery I have handled since, so I trust that you will make a very low figure on these two notes," etc. If he received a favorable reply he says, "I hope to give you a better trade this year than any year during the last half dozen that I have handled your binders."

In response to this, appellant authorized him to take $300 for the notes, which at that time amounted to $375.21.

Deering v. Porter.

It is very apparent from this letter that neither party understood that there was any such agreement between them to release appellee from the payment of the interest as he testified to. Had there been, it is inconceivable that appellee would not have mentioned it in his letter. He had already agreed to push the binder trade, according to his statement, in consideration of being released from the payment of the interest; now he makes a proposition in his letter in substance, that he would push it and would hope to increase it, if he got a favorable response from appellant.

According to his statements he had already agreed to push the trade in consideration of being released from the interest, yet no mention whatever is made in his letter of any such agreement. This is, in substance, all the evidence in the case on the question of the payment of interest.

After making all due allowance for the advantage a litigant obtains under the law by the verdict of a jury, we feel satisfied that the evidence is not sufficient to authorize the verdict.

As to the other objections that are made in regard to other supposed errors, we have to say we do not see any serious error committed by the court except, perhaps, as to instructions " A " and " B " given for the defendant.

In those instructions the hypotheses, in attempting to set out the contract for discharge from interest of appellee, failed to set it out in full as testified to by appellee of his agreement to push the trade as he had theretofore done, and the instructions also fail to require proof of the fulfillment of the contract in that particular.

For the reason that the verdict is against the weight of the evidence, and the error in those instructions, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*